(C.D. 4205)

H. HARTRY, INC.
BAILEY BRIDGES, INC. } *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided April 21, 1971)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.
*L. Patrick Gray, III,* Assistant Attorney General (*Velta A. Melnbrencis*
and *Peter J. Baskin,* trial attorneys), for the defendant.

Before RAO, Chief Judge, FORD and NEWMAN, Judges

NEWMAN, Judge: This case involves the proper rate of duty assessable on merchandise invoiced as "2 Full Sets Bailey Bridge, 100 foot Triple/Double Class 80", which plaintiffs imported from Scotland in 1967, and entered at the port of Los Angeles, California. Bailey bridges are sold (or rented) as prefabricated and unassembled components, which must be joined at the site where the bridge is required by the user. "A Bailey bridge functions to carry vehicles, track vehicles, loads, and place them across streams, ravines" (R.54). The importation was classified by the Government under the provision in item 652.98 of the Tariff Schedules of the United States (TSUS), as "Other" bridges, and accordingly was assessed with duty at the rate of 15 per centum ad valorem.

Plaintiffs claim the classification is erroneous, viz: that "bridges" were not, in fact, imported and nine of the imported components [1] were properly dutiable at the rate of 7.5 per centum ad valorem under the provision in item 652.94, TSUS, for "Other" columns, pillars, posts, beams, girders, and similar structural units. Inasmuch as there was no separate appraisement of the articles in issue, plaintiffs ask that the case be remanded to a single judge so that separate dutiable values may be found for the articles claimed to be classifiable under item 652.94, TSUS.[2]

We overrule the protest.

---

[1] These articles are depicted in plaintiffs' exhibits 2–8 and 10 and comprise: sway braces (exhibit 2); transoms (exhibit 3); panels (exhibit 4); base plates (exhibit 5); stringers (exhibit 6); bracing frames (exhibit 7); rakers (exhibit 7); bearing shoes (exhibit 8); and end posts (exhibit 10).

[2] See 28 U.S.C. § 2636(d).

285

THE STATUTE

> Hangars and other buildings, bridges, bridge
> sections, lock-gates, towers, lattice masts,
> roofs, roofing frameworks, door and window
> frames, shutters, balustrades, columns, pil-
> lars, and posts, and other structures and
> parts of structures, all the foregoing of base
> metal:
>> Of iron or steel:
>>
>> \* \* \* \* \* \* \*
>>
>>> Columns, pillars, posts, beams,
>>> girders, and similar struct-
>>> ural units:
>>>> Not in part of alloy iron
>>>> or steel:
>>>>> Cast-iron (except
>>>>> malleable cast-
>>>>> iron) articles,
>>>>> rough or ad-
>>>>> vanced

| | | |
|---|---|---|
| 652.94 | Other_____ | 7.5% ad val. |
| | \* \* \* \* \* \* \* | |
| 652. 98 | Other _____ | 15% ad val. |

THE RECORD

The record consists of the testimony of two witnesses and ten exhibits introduced in evidence by plaintiffs; and the testimony of one witness and one exhibit offered by defendant.

Plaintiffs' witnesses were: Norman C. Barker, a senior customs import specialist at the port of Los Angeles, whose advisory classification of the shipment in issue was adopted by the district director upon liquidation of the entry; and Charles F. Hamlin, a civil engineer and president of Bailey Bridges, Inc.

Defendant's witness was Frank J. Buchholz, a civil engineer employed by the United States Army Corp. of Engineers.

Mr. Barker testified that he believed, from the description of the merchandise on the special customs invoice ("2 Full Sets Bailey Bridge"), that the shipment comprised "a full set of Bailey bridges"; and further that he "would have investigated to see that it was not a complete Bailey bridge before [he] would have made any other advisory classification". If the shipment "proved not to be a complete set, it would have been classified as the parts of, like girders, beams, and such as that, at that time". Moreover, Barker stated that, *if* the merchandise had consisted of "just beams, girders, and such as that", he would have classified it under item 652.94; "but if they were enough

to complete a bridge, then it would come under the 'bridges' classification".

Mr. Hamlin testified that his firm is engaged in the business of selling and renting bridge components throughout the United States. He was responsible for the purchase of the importation, and had inspected the said merchandise in Scotland and England prior to its shipment. Continuing, Hamlin stated that the description of the merchandise on the special customs invoice was not "necessarily specific enough" or "adequate to describe" what he had actually purchased, and the components are listed on two large sheets attached to the entry papers (which are part of the official papers received in evidence).

Hamlin also testified that the shipment included various structural components (depicted in photographs received in evidence as exhibits 1–8 and 10) and erection gear. The components were not dedicated "especially" for use in making bridges, and were "used to make towers, columns, and pillars, bridges, and girders, and anchors, and a variety of uses".

Additionally, Mr. Hamlin stated that:

"Sway braces" (exhibit 2) can be used in any system where an adjustable brace is desired.

"Transoms" (exhibit 3) can be used as beams.

"Panels" (exhibit 4) are truss sections, or girders, which are used in making towers, piers, and falsework trusses.

"Base plates" (exhibit 5) are used as spread footings for columns, to distribute the load.

"Stringers" (exhibit 6) are three little I-beams made into frames, which are used as wall structures or more often, to support a floor or load-bearing platform.

"Bracing frames" (exhibit 7) are normally used as a separator for other structural elements, to hold them parallel, and are most commonly used with the "panels".

"Rakers" (exhibit 7) are used as braces, much as the "sway braces" are used, except that they are not adjustable.

"Bearing shoes" (exhibit 8) are bases similar to the "base plates", and distribute a vertical load over the structure below.

"End posts" (exhibit 10) are used almost exclusively with the panels to distribute the load "into the bearings". They are of two types: male and female, depending on which end of the panel they are to be attached.

Hamlin further testified as follows:

It would be possible to erect bridges of various sizes and types with the imported merchandise. If the largest Bailey bridge possible were assembled, not all of the components of the importation would be utilized;

The imported merchandise was stockpiled as inventory in Bailey's storage yard. When orders were received, the merchandise was either rented or sold for use in a variety of structures. Structures that could be erected from the components would include towers, piers, box girders, falsework, pillars and columns. The end posts are made specifically to attach to the Bailey bridge panel component by means of pins and carter pins similar to a bolt. The wrenches and jacks included in the shipment are not dedicated for use with the other merchandise listed on the invoices.

Concluding, Hamlin stated that a "Bailey bridge" is a spanning type structure assembled from Bailey bridge components. However, a "bridge" exists only after the components are assembled. The term "set" as used in connection with Bailey bridges "is a convenient list or quantity of components for ordering, or for exporting, or for convening a stockpile, as in a warehouse", but "set" does not imply one bridge. Rather, a "set" implies "a stock of components able to do many things".

Mr. Buchholz testified, for the defendant, that he became "familiar with the term 'Bailey bridges'—during World War II", and that Bailey bridges were assembled by him or under his supervision. He stated that a Bailey bridge is a bridge made up of many pieces, and agreed with Hamlin that the pieces would not be classifiable as a "bridge" until they were assembled.

1.

It is plaintiffs' position that the shipment did not constitute "bridges", but that such shipment comprised merely various construction materials suitable for use in building many types of structures. Additionally, plaintiffs contend that the nine articles depicted in exhibits 2–8 and 10 are "articles of unitary construction, serving similar structural roles as do columns, beams, and girders".

The Government argues that plaintiffs have failed to establish that the importation did not consist of two unassembled (or disassembled) bridges, or that the importation is properly dutiable under item 652.98, TSUS. Defendant insists that plaintiffs failed to prove that the articles in controversy are properly dutiable under item 652.94, as claimed.

Inasmuch as there is no dispute between the parties that the classification is presumptively correct, plaintiffs had the usual dual burden of proof. See *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004 (1970). Initially, we shall consider whether plaintiffs have shown that the Government's classification was erroneous.

## 2.

Mr. Barker's testimony does not aid plaintiffs in showing that the classification was wrong. The witness did not state that two bridges were not imported; nor is there anything in Barker's testimony that leads us to believe he erred in his advisory classification. What Barker's advisory classification "would have been" had he found that the shipment was not classifiable as "bridges" is of no evidentiary value, and certainly is not binding on the court in determining the proper classification.

## 3.

Turning to the testimony of Mr. Hamlin, we are unable to find sufficient probative evidence establishing a *prima facie* case overcoming the classification. Hamlin testified that if the largest Bailey bridge possible were built, using the components of the shipment, not all of the components would be consumed. The witness, however, did not identify which components would not be consumed after erecting *a* bridge. Since it appears that *two* bridges were imported, obviously if only one bridge were built there would most likely be components left over and not consumed in the erection of a *single* bridge.

Significantly, there is nothing in Hamlin's testimony that proves there were any essential components missing from the shipment for the erection of the two Bailey bridges specified on the special customs invoice. We fail to see any legal significance in Hamlin's assertion that the *size* bridge described on the special customs invoice had never, in his experience, been built. Item 652.98 does not impose any size limitations on the bridges covered.

In short, plaintiffs have failed to establish that the Government's classification under item 652.98 was erroneous. Or stated differently, that "bridges" were not, in fact, imported.

## 4.

Plaintiffs' main argument against the correctness of the classification appears to be that the components were not dedicated to use in assembling bridges. In our opinion, such argument is unsound.

If two completely *assembled* bridges had been imported, it could not seriously be contended by plaintiffs that because the components of such bridges were useable in other types of structures, the bridges were consequently not classifiable as bridges. Conversely, where bridges are imported *unassembled*, we see no reason why the question of dedication of the components to bridge use should have any more significance than when such components are assembled. Hence, whether imported

components constitute a "bridge" under item 652.98 depends neither upon their being assembled,[3] nor upon their dedication to bridge use.

We have further noted that the imported merchandise was stock-piled as inventory in Bailey's storage yard, and subsequently was rented or sold for use in a variety of structures. However, we agree with the Government's contention that the ultimate or actual use of the components after importation does not affect their dutiable status as "bridges" in their condition as imported. *Leonard Levin Co.* v. *United Staees*, 27 CCPA 101, C.A.D. 69 (1939).

### 5.

In sum, we find that plaintiffs have failed to overcome the presumption of correctness attaching to the classification. Accordingly, it becomes unnecessary to determine the correctness of plaintiffs' claim under item 652.94. But, without deciding whether or not the articles are a type of column, beam, or girder (or structural unit similar thereto), we wish to point out, at the very least, that plaintiffs offered no evidence that the articles are "Not in part of alloy iron or steel", a prerequisite for classification under item 652.94, TSUS. On the contrary, it appears from plaintiffs' exhibit 11, a sales brochure of Bailey Bridges, Inc., (under "design data"), that: "Low-alloy high tensile steel, corresponding to ASTM Specification A242, is used in the truss panels, end posts, and transoms". Consequently, plaintiffs have not brought the merchandise within the purview of item 652.94.

The protest is overruled, and judgment will issue accordingly.

(C.D. 4206)

---

[3] Rule 10(h) of the General Headnotes and Rules of Interpretation states: "unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished". Clearly, the context of the superior heading to item 652.98 does not require that the described articles be assembled or finished. On the contrary, it would be anticipated that such structures as hangars, buildings, bridges, etc. frequently would be imported in an unassembled and unfinished condition.